1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   William Floyd Smith,                 )   No. CV 04-573-PHX-FJM (MS)
                                         )
10           Petitioner,                 )
                                         )
11  vs.                                  )   **REPORT AND RECOMMENDATION**
                                         )
12                                       )
    Dora B. Schriro, et al.,             )
13                                       )
             Respondents.                )
14                                       )
    ─────────────────────────────────    )

15

16  **TO THE HONORABLE FREDERICK J. MARTONE UNITED STATES DISTRICT JUDGE:**

17        Petitioner's *pro se* Amended Petition for Writ of Habeas Corpus, brought

    pursuant to 28 U.S.C. § 2254, was filed in this Court on August 5, 2005.  [Doc. 30].[1]

18  Respondents' Answers were filed on August 11, 2005 and January 13, 2006.  [Doc.

19

20  ─────────────────────

21        [1] On August 9, 2005, Petitioner filed a Motion to Dismiss his unexhausted
    claims, and lodged an Amended Habeas Petition that reflected five grounds for relief
22  that Petitioner wished to present for the Court's review.  Respondents' Answer, filed
    August 11, 2005, addressed only grounds one through four of Petitioner's Amended
23  Habeas Petition, arguing that Petitioner had moved to dismiss ground five of his
    Amended Habeas Petition along with the other claims he had sought to dismiss.
24  Petitioner responded in a Motion for Procedural Status (Doc. # 45) to reiterate that
    he intended to present ground five in his Amended Habeas Petition for the Court's
25  review.  After reviewing the record, the Court determined that Petitioner did intend
    to present ground V in his Amended Habeas Petition, and ordered Respondents to
26  answer.  On January 13, 2006, Respondents filed their Supplemental Answer to
    ground five of Petitioner's Amended Habeas Petition. [Doc. # 49].  On March 15,
27  2006, Petitioner filed his Supplemental Reply [Doc. # 54].
28

1   # 33, 49].  Petitioner's Replies were filed on October 25, 2005 and March 15, 2006

2   [Doc. 44, 54].  The Court now Reports and Recommends as follows:

3   **I.    BACKGROUND AND PROCEDURAL HISTORY**

4          The Arizona Court of Appeals summarized the pertinent facts:

>           In May 1994, defendant hired R.T., 15, to work for
> him at his office.  Shortly thereafter, defendant offered
> R.T. a pay increase to do housework at his home.
> However, R.T. testified that, while she was at his home,
> they would often just talk  or watch movies together.
> Defendant also purchased more than $ 400 worth of
> clothing for R.T. to wear at his office, even though she
> spent most of her time at defendant's house.
>           On one occasion, defendant invited R.T. to
> sunbathe by the pool at his house.  When R.T. replied that
> she had no swimsuit, defendant suggested that she wear
> her bra and underwear.  Defendant complimented her
> body and told her not to be modest because he would not
> look at her.  R.T. complied with defendant's suggestions.
>           Around noon on July 7, 1995, defendant picked up
> R.T. and drove her to his house.  Defendant offered her a
> drink of hot chocolate, which R.T. declined.  She asked
> instead for sparking apple cider.  Defendant prepared the
> drink in his kitchen, outside of R.T.'s sight, and brought it
> to her in a coffee cup.  R.T. drank the cider quickly, then
> consumed another cup which defendant provided.  When
> R.T. rose from her seat, she felt dizzy.  She asked
> defendant if the cider contained alcohol.  Defendant
> replied that it did not, and he showed her the cider bottle.
> R.T. complained that she felt "really, really weird" and
> defendant told her to lie down.  When R.T. sat up,
> because she wanted to watch a video, defendant pushed
> her head down and told her to "stop fighting it."  She
> recalled nothing else that occurred until that night.
>           R.T.'s mother called defendant around 5:00 p.m. to
> determine her daughter's whereabouts.  After three or four
> minutes, he brought R.T. to the phone.  R.T. sounded
> "goofy" and told her mother she had been sleeping. R.T.'s
> mother said she would pick her up, but before she could
> leave her house, defendant brought R.T. home.  R.T. was
> able to walk but was still "goofy."  Defendant claimed that
> R.T. had complained she was not feeling well, so he had
> advised her to lie down and rest.  He said that he had
> spent the afternoon making telephone calls to clients.
>           Later, R.T.'s mother took her to the hospital.
> Subsequently, a test of R.T.'s urine obtained there
> revealed the presence of triazolam, the generic name for
> the drug Halcion, a dangerous drug under the Arizona
> Revised Statutes Annotated ("A.R.S.") section 13-
> 3401(6)(c)(lviii) (Supp. 1996).  Halcion is a sedative with
> a very strong hypnotic property which can cause dizziness
> and lightheadedness and can induce sleep.  When placed

- 2 -

in cider, Halcion fizzes briefly and then is nearly imperceptible.   Police recovered an empty Halcion prescription bottle from defendant's kitchen.

When interviewed by police, defendant admitted that he had poured cider for R.T., but claimed that he had done so within her view.  He told police that R.T. had said she was feeling drowsy and that she had started to act "goofy."   He had talked her into lying down and had repeatedly asked her if she wanted to see a doctor.  Defendant denied giving R.T. Halcion.  Although police did not ask, defendant volunteered: "But I never touched her.  And if she says I did, she is lying like hell."  When police told defendant that R.T. had made no such accusation, defendant replied: "Okay.   Because if she did, she is lying."

The State also introduced evidence that defendant had written letters to an acquaintance asking him to testify falsely in his defense.  Defendant had suggested that the acquaintance testify that, when he visited defendant, R.T. approached him and asked if he knew where she could get drugs.

Petitioner was found guilty as charged on October 10, 1995. [Doc. # 33, Ex. L at 110].  Although that jury was discharged, the trial judge permitted the State to try the allegation of a historical prior conviction before a newly impaneled jury, which found the allegation true.  [Doc. # 33, Ex. O at 68-69].    The trial court sentenced Petitioner to the presumptive term of 9.25 years imprisonment.  [Doc. # 33, Ex. P at 30-31].

Petitioner filed a timely notice of appeal to the Arizona Court of Appeals, presenting four issues: (1) trial court error in refusing to instruct the jury on a similar statute to the one with which he was charged and in rejecting his motion for judgment of acquittal on that ground; (2) trial court error by admitting the victim's treating physician's notes in violation of the confrontation clause; (3) trial court error by instructing the jury on reasonable doubt under State v. Portillo, 182 Ariz. 596-97 (1995), thereby violating Petitioner's due process rights; and (4) trial court error in empaneling a new jury to resolve the trial on whether Petitioner had a prior historical felony conviction.  [Doc. # 33, Exs. R and S].

1    The Arizona Court of Appeals affirmed Defendant's conviction, but remanded
2 for re-sentencing without the prior felony enhancement, having found error in the trial
3 court's empaneling of a new jury for the sentencing enhancement only.  The Court
4 of Appeals rejected Petitioner's argument that A.R.S. section 13-3407(A)(5) contains
5 an element of consent when read in the context of other subsections of that statute,
6 and in contrast to A.R.S. 13-1205(A).  Moreover, the Court of Appeals rejected
7 Petitioner's argument that the trial court should have instructed the jury on A.R.S.
8 13-1205(A), determining that A.R.S. 13-1205(A) contains an element not present in
9 A.R.S. 13-3407(A)(5).  The Court also rejected Petitioner's argument that the trial
10 court improperly admitted records of the victim's hospital visit, which contained
11 statements by the victim's treating physician.  The Court of Appeals noted that ARIZ.
12 R. EVID. 803(4) only applies to statements made by a patient to a doctor, and not
13 statements made by a doctor.  Moreover, the court noted that the records were
14 properly admitted pursuant to ARIZ. R. EVID. 803(6), the business records exception.
15 The Arizona Court of Appeals also affirmed the trial court's use of the Portillo
16 reasonable doubt instruction, articulating that because the Arizona Supreme Court
17 mandated that instruction, the Court of Appeals had no authority to overrule it.
18 Finally, the Arizona Court of Appeals did accept Petitioner's argument the trial court
19 erred in empaneling a new jury to hear the allegation of a prior conviction to enhance
20 Petitioner's sentence.  As a result the Arizona Court of Appeals ordered that
21 Petitioner be resentenced without the sentencing enhancement. [Doc. # 33, Ex. A
22 at 9-11].  On remand, the trial court resentenced Petitioner to a term of five years
23 imprisonment.  [Doc. # 33, Ex. T].

24    Petitioner filed a notice of post-conviction relief on August 3, 1997. [Doc. # 33,
25 Ex. U].  Petitioner's counsel informed the court that he could not identify any
26 colorable claims for relief, and Petitioner filed his own "Supplemental Petition to
27 Post-Conviction Matter" *pro se.* [Doc. # 33, Exs. V and W].  Petitioner argued that
28 trial counsel was ineffective in failing to object to the admission of prejudicial hearsay

1   statements contained in the victim's medical records, which were admitted pursuant

2   to ARIZ. R. EVID. 803(6).   The trial court found that Petitioner did not present a

3   colorable claim of ineffective assistance of counsel, and even if he did, Petitioner did

4   not suffer prejudice because of the overwhelming evidence of Petitioner's guilt.  The

5   trial court accordingly dismissed Petitioner's petition. [Doc. # 33, Ex. Y at 2-4].

6        Petitioner petitioned the Arizona Court of Appeals to review the trial court's

7   dismissal of his petition for post-conviction relief.  The Arizona Court of Appeals

8   summarily denied review on February 11, 2004. [Doc. # 33, Ex. AA]. On March 11,

9   2004, Petitioner filed his original habeas petition in this Court. [Doc. # 1].  After

10  Petitioner moved to dismiss his unexhausted claims, Petitioner filed his Amended

11  Habeas Petition on July 26, 2005, which presented five grounds for relief.[2] [Doc. #

12  30].[3]  Respondents oppose Petitioner's petition, arguing that ground four is not

13  properly exhausted, and grounds one, two, three, and five should be denied on their

14  merits. [Doc. # 33].   Alternatively, Respondents argue that ground four is not

15  cognizable on federal habeas review. [Id.].

16  **II.    EXHAUSTION AND PROCEDURAL DEFAULT**

17       **A.    Controlling Principles**

18       No writ may be granted unless it appears that the applicant has exhausted the

19  remedies available in state courts.  28 U.S.C. §2254(b)(1)(A).  Under the exhaustion

20  doctrine, a petitioner must present his claims to the state courts on direct appeal or

21  through collateral proceedings before a federal court will consider a habeas corpus

22  petition.  Rose v. Lundy, 455 U.S. 509 (1982); Lindquist v. Gardner, 770 F.2d 876,

23

24       [2] The substance of Petitioner's claims is discussed below.

25

26       [3] As noted above, Respondents only answered grounds I-IV of Petitioner's
    Amended Habeas Petition.  After Petitioner inquired as to the status of ground V,
27  the Court ordered Respondents' to respond to ground V; the Response was filed on
    January 13, 2006. [Doc. # 49].  Petitioner filed a Reply to ground V on March 15,
28  2006. [Doc. # 54].

877 (9th Cir. 1985).  Specifically, exhaustion requires that a petitioner either fairly present his or her claims to the Arizona Court of Appeals, Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999)(stating that "except in habeas petitions in capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them"), or show that no state remedies remain available.  Kellotat v. Cupp, 719 F.2d 1027, 1029 (9th Cir. 1983) (citing Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982).  To satisfy the fair presentation requirement, a petitioner must fairly present the "substance of federal claims to the state courts in order to give the State the opportunity to pass upon and to correct alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  See also Baldwin v. Reese, 541 U.S. 27, 29 (2004); Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 278 (1971); Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).

A habeas court will not review a question of federal law if that question has been decided by a state court and the court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000).  The state law ground may be substantive or procedural. Coleman, 501 U.S. at 729-30 (recognizing that the "independent and adequate state ground" doctrine bars federal habeas corpus review where a state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement").  To be independent, "the state law basis for the decision must not be interwoven with federal law."  LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).  See also Stewart v. Smith, 536 U.S. 856, 860 (2002)(stating that  "[I]f the state court's decision rested primarily on a ruling on the merits . . ., its decision would not be independent of federal law.").  "To be deemed adequate, the state law ground for decision must be well-established and consistently applied."  Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003); see also

1  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999)("A state procedural rule
2  constitutes an adequate bar to federal court review if it was 'firmly established and
3  regularly followed' at the time it was applied by the state court")(quoting Ford v.
4  Georgia, 498 U.S. 411, 424 (1991)).

5      When a petitioner procedurally defaults his federal claims in state court,
6  federal habeas review of the claims is barred unless the petitioner demonstrates
7  cause for the default and actual prejudice from the alleged violation of federal law,
8  or that failing to review the claims "will result in a fundamental miscarriage of justice."
9  Coleman, 501 U.S. at 750.  "'Cause' is a legitimate excuse for the default; 'prejudice'
10  is actual harm resulting from the alleged constitutional violation."  Magby v.
11  Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  If the petitioner fails to establish
12  cause for his procedural default, the court need not consider whether the petitioner
13  has shown actual prejudice resulting from the constitutional violations.  Smith v.
14  Murray, 477 U.S. 527, 533 (1986).  To show a fundamental miscarriage of justice,
15  a petitioner must make the extraordinary showing that the alleged constitutional
16  violation probably resulted in the conviction of an innocent person.[4]  Schlup v. Delo,
17  513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496, (1986); Clark v.
18  Ricketts, 886 F.2d 1152, 1156 (9th Cir. 1989).  The circumstances constituting a
19  fundamental miscarriage of justice apply in only a "narrow class of cases." Schlup,
20  513 U.S. at 321.

21      **B.   Petitioner's Claims**

22      In this case, Respondents argue that ground four is procedurally defaulted.
23  Specifically, Respondents assert that ground four was not properly present as a
24  federal issue to the Arizona Court of Appeals.  For the reasons that follow, the Court

25

26

27  ―――――――――――
28  [2]   In most cases, victims of a "fundamental miscarriage of justice" will meet
      the standard for cause and prejudice. Murray, 477 U.S. at 495-96.

1  finds that ground four is procedurally defaulted.  Grounds one, two, three, and five

2  will be discussed on their merits.

3  **1. Exhausted Claims**

4  Respondents concede that grounds one, two, three, and five have been

5  exhausted and should be addressed on their merits. [Doc. # 33 at 9, Doc. # 49

6  (addressing the merits of ground five)].   The record supports this concession.

7  Accordingly, grounds one, two, three, and five will be discussed on their merits.[5]

8  **2. Claim Defaulted for Failure to Present (Ground Four)**

9  The Court finds that Petitioner's fourth claim was never properly presented

10  as an independent federal issue in state court.  The Court additionally finds that this

11  claim is procedurally defaulted.

12  As noted above, to properly exhaust a claim, the substance of a Petitioner's

13  federal claim must be presented to the state courts to allow them the opportunity to

14  correct any alleged violations.  Duncan, 513 U.S. at 365-66; Baldwin, 541 U.S. at 29;

15  Anderson, 459 U.S. at 6; Picard, 404 U.S. at 278; Casey, 386 F.3d at 911.  "It is not

16  enough that all the facts necessary to support the federal claim were before the state

17  courts, or that a somewhat similar state-law claim was made." See Anderson, 459

18  U.S. at 6; see also Castillo v. McFadden, 370 F.3d 882, 886-87 (9th Cir. 2004).  Here,

19  the Court finds that the allegations alleged in Petitioner's fourth claim were not

20  presented in state court under the same legal theory now alleged in Petitioner's

21  habeas petition.

22  In ground four, Petitioner alleges that Rules 803(4) and 803(6)(a)-(e) of the

23  Federal Rules of Evidence were contravened when the trial court admitted the

24  victim's medical records that contained statements by the treating physician which

25

26

27  _____

28  [5] See discussion, *infra*, at § III, B.

1  Petitioner contends were prejudicial opinions and conclusions.[6]  Petitioner's claim

2  is unexhausted because Petitioner failed to fairly present it as a federal issue.  In

3  Petitioner's direct appeal, Petitioner argued to the Arizona Court of Appeals that his

4  rights under the Confrontation Clause were violated because the treating physician

5  was not present for cross-examination.  Further, Petitioner argued that the admission

6  of the treating physician's comments were violative of the Arizona Rules of

7  Evidence.[7]  Petitioner did not support his argument with federal authority.[8]

8          For the foregoing reasons, Petitioner's fourth claim was not fairly presented

9  to the state courts.  Were Petitioner to attempt to return to state court, however, he

10  would be unable to re-assert his unexhausted federal claim.  Rule 32 proceedings

11  must be initiated within ninety days of the entry of judgment and sentence or within

12  thirty days of the order and mandate affirming the judgment and sentence on direct

13  _____

14          [6] Petitioner isolates the following statements in the victim's medical records as violative of the Federal Rules of Evidence:

15                  The treating physician, a Doctor Sucher, wrote after the
16                  words, "Chief Complaint", "Possibly was drugged".  After
                    "History of present illness", Dr. Sucher wrote: "The patient
17                  is a fifteen-year-old girl who works for a gentleman.  He
                    gave her a glass of sparkling apple cider. . . Her mother
18                  brings her here and is concerned that she was perhaps
19                  drugged and potentially whether she was abused" . . .
                    Under "Diagnostic Impression", Dr. Sucher wrote:
20                  "Possible drug intoxication".  Under the work "Addendum",
                    Dr. Sucher wrote: "The urine drug screen, however, was
21                  positive for Benzodiazepines, confirming suspicion that
22                  she had 'indeed' been slipped some sort of drug in the
                    sparkling cider".
23  [Doc. # 30 at 8-8(a) (ellipses in original)].

24          [7] Petitioner did not cite to the Federal Rules of Evidence. Although Petitioner's
25  fourth claim is procedurally defaulted, Respondents correctly note that it would also
    fail on it's merits, as the Federal Rules of Evidence explicitly do not apply to state
26  court proceedings.  See FED. R. EVID. 1101(a).

27          [8] Petitioner relied on federal authority when presenting his argument on the
28  Confrontation Clause, but that precise claim is not presented on habeas review.

1 appeal. See ARIZ.R.CRIM.P. 32.4(a).[9] Because Petitioner would be precluded under

2 Arizona law from returning to state court to properly exhaust his claims, the claims

3 are deemed "technically exhausted" but procedurally defaulted.    See Beaty v.

4 Stewart, 303 F.3d 975, 987 (9th Cir. 2002); see also Cassett, 406 F.3d at 621, n. 5

5 (discussing the concepts of technical exhaustion and procedural default).  Federal

6 habeas review of the merits of Petitioner's procedurally defaulted claim by this Court

7 is therefore barred unless Petitioner can show cause for the procedural default and

8 actual prejudice, or that failure to consider his claim will result in a fundamental

9 miscarriage of justice.  Coleman, 501 U.S. at 750; Griffin v. Johnson, 350 F.3d 956,

10 960 (9th Cir. 2003).

11 **C.  Cause and Prejudice**

12        For the reasons set forth above, ground four is procedurally defaulted.

13 Accordingly, the Court may not consider these claims absent a showing of cause

14 and prejudice or a fundamental miscarriage of justice.

15        Petitioner has not put forth any argument to suggest cause or prejudice.

16 Petitioner even concedes in his Reply that his claim is procedurally defaulted. [Doc.

17 # 44 at 21].   The record does not support a finding of cause or prejudice.

18 Accordingly, federal habeas review of Petitioner's procedurally defaulted claim is

19 barred.   The Court therefore recommends that ground four be dismissed with

20 prejudice.

21 **III.    REMAINING CLAIMS (GROUNDS ONE, TWO, THREE, AND FIVE)**

22        **A.    Standard of Review**

23

24        [9] Petitioner's claims would also likely be precluded pursuant to Rule
25 32.2(a)(3).   See ARIZ.R.CRIM.P. 32.2(a)(3) (stating that "[A] defendant shall be
precluded from relief under this rule based upon any ground.... (3) that has been
26 waived at trial, on appeal, or in any previous collateral proceeding").  However, in
Cassett v. Stewart, 406 F.3d 614 (9th Cir. 2005), the Ninth Circuit recently held that
27 preclusion may not always be clear under Rule 32.2(a)(3) in cases of technical
exhaustion and procedural default.   In light of Cassett, this Court places only
28 secondary reliance on rule 32.2(a)(3).

1     Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
2  this Court shall not grant a petition for writ of habeas corpus with respect to any
3  claim adjudicated on the merits in state court unless (1) the decision by the state
4  court was "contrary to, or involved an unreasonable application of, clearly
5  established Federal law, as determined by the Supreme Court of the United States";
6  or (2) the decision by the state court was based on an unreasonable determination
7  of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  See also Rice
8  v. Collins, No. 04-52, __ S.Ct.__, 2006 WL 119293, *4 (U.S. Jan. 18, 2006).  A state
9  court decision is "contrary to clearly established precedent" if the state court applies
10  a rule that contradicts the governing law set forth by the Supreme Court or arrives
11  at a different result than the Supreme Court in a case involving facts that are
12  materially indistinguishable from a Supreme Court case.  See  Lockyer v. Andrade,
13  538 U.S. 63, 73 (2003).  "Under the 'unreasonable application' clause, a federal
14  habeas court may grant the writ if the state court identifies the correct governing
15  legal principle from this Court's decisions but unreasonably applies that principle to
16  the facts of the prisoner's case."  Id. at 75 (quoting Williams v. Taylor, 529 U.S. 362,
17  406, 413 (2000)).  State court rulings and factual findings are presumed to be correct
18  where they are supported by the record.  See 28 U.S.C. § 2254(e)(1).  Petitioners
19  "have the burden of rebutting the presumption of correctness by clear and
20  convincing evidence."  Id.

21     Where the state court summarily denies relief without providing rationale, this
22  court "review[s] the record to determine whether the state court's decision
23  contravened, or unreasonably applied, clearly established law."  Wilson v. Czerniak,
24  355 F.3d 1151, 1153-54 (9th Cir. 2004)(citing Delgado v. Lewis, 223 F.3d 976,
25  981-82 (9th Cir. 2000)).  See also Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002),
26  amended at 311 F.3d 928 (9th Cir. 2002).  In such cases, this Court does not
27  independently decide the contested legal question, but instead determines whether

28

1   §2254(d) mandates reversal of the state court decision.  Greene v. Lambert, 288

2   F.3d 1081, 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.

3       **B.    Discussion**

4           **1.    Ground One**

5           In ground one, Petitioner asserts that his right to due process under the

6   Fourteenth Amendment was violated when the trial court failed to instruct the jury on

7   A.R.S. section 13-1205(A), a similar statute to the statute under which Petitioner was

8   convicted.[10]  Petitioner further posits that the trial court erred in denying Petitioner's

9   motion for directed verdict pursuant to ARIZ. R. CRIM. P. 20 on the charge pursuant

10  to A.R.S. § 13-3407(A)(5). [Doc. # 30 at 5-5b].  Specifically, Petitioner argues that

11  § 13-3407(A)(5) contains an implied element of consent when read in the context of

12  other subsections of that statute.  Additionally, Petitioner asserts that an element of

13  consent is revealed when that statute is contrasted with § 13-1205(A), which

14  requires the absence of consent.  Petitioner argues that the two statutes must be

15  read consistently with one another, therefore implying an element of consent in § 13-

16  3407(A)(5). [Id.].

17          The Arizona Court of Appeals rejected Petitioner's arguments.  First, the court

18  articulated that none of the other subsections of §13-3407 require an element of

19  consent. [Doc. # 33, Ex. A at 4-7].  Moreover, the court noted, "[t]he statutory

20  definitions of 'administer' in section 13-3401(1), 'transfer' in section 13-3401(29), and

21  'deliver' in section 13-3401(7), neither reference nor rest on consent by the other

22  party." [Id.].  As a result, Petitioner's argument that an element of consent is implied

23  in § 13-3407(A)(5) when looking at the other subsections was substantially

24

25          [10] Petitioner was sentenced under A.R.S. § 13-3407(A)(5), which prohibits

26  "[a]dministering a dangerous drug to another person." Petitioner contrasts this

27  statute with §13-1205(A) which prohibits "knowingly introduc[ing] or caus[ing] to be
    introduced into the body of another person, without such other person's consent .

28  . . a narcotic drug or dangerous drug."

1  weakened.   Second, the court determined that Petitioner had not demonstrated a

2  conflict between 13-3407(A)(5) and 13-1205(A), and that the existence of a lack of

3  consent element in 13-1205(A) did not require the court to imply a consent

4  requirement in 13-3407(A)(5).   Moreover, the court noted that "[i]n cases in which

5  both a general and a specific statute apparently apply, we have noted '[i]t is

6  generally accepted that where there is no conflict between two statutes, a criminal

7  offense may be prosecuted under either statute where the facts are such that they

8  fall within the prohibitions of both."   [Id. (citing State v. Mussiah, 141 Ariz. 212, 214

9  (Ariz. Ct. App. 1984)].   Third, 13-1205(A) was not a lesser included offense of 13-

10  3407(A)(5) as the former statute contains an element that the latter does not:

11  absence of consent.   Therefore, the trial court was not authorized to instruct the jury

12  on a related offense.   Finally, the court determined that because there is no element

13  of consent implied in 13-3407(A)(5), Petitioner was not entitled to a judgment of

14  acquittal pursuant to ARIZ. R. CRIM. P. 20.

15       Petitioner has not articulated in either his Amended Habeas Petition or in his

16  Reply any part of the Arizona Court of Appeals' decision that involved an objectively

17  unreasonable application of clearly established Federal law, as determined by the

18  Supreme Court of the United States. His argument that an element of consent is

19  implied in 13-3407(A)(5) and that the state had not carried its burden with respect

20  to that implied element and therefore he was entitled to a directed verdict on the

21  charge against him is completely predicated on interpretations of Arizona state law,

22  and does not relate to the decisions of the Supreme Court.   Further, Petitioner's

23  argument that the trial court should have instructed the jury under the less serious

24  13-1205(A) because they are statutes which seek to address similar conduct has

25  already been foreclosed.   See Hopkins v. Reeves, 524 U.S. 88, 97 (1998)

26  (distinguishing Beck v. Alabama, 447 U.S. 625 (1980) and holding that "requiring

27  that an instruction be given on some *other* offense -- what could be called a 'lesser

28  related offense' -- when no lesser included offense exists . . . is not only

1  unprecedented, but also unworkable.")(emphasis in original); see also  Solis v.

2  Garcia, 219 F.3d 922, 928-29 (9th Cir. 2000) ("[T]he failure of a state court to instruct

3  on a lesser offense fails to present a federal constitutional question and will not be

4  considered in a federal habeas corpus proceeding.") The two statutes at issue did

5  not have the same elements, and therefore the less serious of the two was not a

6  lesser included offense.  See State v. Celaya, 135 Ariz. 248, 251 (1983).

7      None of the meandering arguments proffered by Petitioner changes this result.

8  Further, to the extent that Petitioner challenges the sufficiency of the evidence

9  against him or ineffective assistance of counsel because counsel could not present

10  a viable defense, see Doc. # 44 at 3, 10, these claims have not been exhausted in

11  state court.  Duncan, 513 U.S. at 365-66; Baldwin, 541 U.S. at 29; Anderson, 459

12  U.S. at 6; Picard, 404 U.S. at 278; Casey, 386 F.3d at 911.  Accordingly, the Court

13  will recommend that ground one be denied and dismissed with prejudice.

14          **2.    Ground Two**

15      In Petitioner's second ground for relief, Petitioner asserts that his right to due

16  process pursuant to the Fourteenth Amendment was violated when the trial court

17  issued a misleading reasonable doubt instruction derived from  State v. Portillo, 182

18  Ariz. 592, 596 (1995).

19      The Arizona Court of Appeals flatly rejected Petitioner's argument by

20  identifying that the Arizona Supreme Court mandated the Portillo instruction, and a

21  court of appeals has no authority to disregard the state supreme court. [Doc. # 33,

22  Ex. A at 9].

23      The Arizona Supreme Court's holding in Portillo, as applied by the Arizona

24  Court of Appeals to Petitioner's claim that the instruction was "misleading," is not

25  contrary to clearly established federal law.  In Portillo, the Arizona Supreme Court

26  discussed the U.S. Constitutional standards applicable to jury instructions, and

27  recognized that the due process clause of the U.S. Constitution requires a criminal

28  defendant to be convicted upon proof beyond a reasonable doubt.  State v. Portillo,

1   182 Ariz. at 594 (citing, among other cases,  In re Winship, 397 U.S. 358, 364 (1970)

2   and Cage v. Louisiana, 498 U.S. 39, 41 (1990)).  The Court further noted that the

3   Federal Judicial Center's model instruction was sanctioned by Justice Ginsburg in

4   her concurring opinion in Victor v. Nebraska, 114 S.Ct. 1243, 1253 (1994).[11]

5          The Court finds that the Arizona Supreme Court's reference to the reasoning

6   in Victor v. Nebraska, including Justice Ginsburg's concurrence, and the Arizona

7   Supreme Court's conclusion that the Federal Judicial Center's reasonable doubt

8   instruction is constitutional[12] as applied to criminal defendants in Arizona, does not

9   contradict governing sets of clearly established laws regarding reasonable doubt

10  instructions established by the Supreme Court in cases such as In re Winship and

11  Cage.[13]  Further, although only U.S. Supreme Court law is binding on states, Ninth

12  Circuit precedent is relevant authority in determining whether a state court decision

13  is objectively unreasonable.   Himes v. Thompson, 336. F.3d 848, 853 (9th Cir.

14

15         [11]    Justice Ginsburg in Victor concluded that the Federal Judicial Center's
16  instruction is "clear, straightforward, and accurate," and that:

17         This instruction plainly informs the jurors that the prosecution must
18         prove its case by more than a mere preponderance of the evidence,
           yet not necessarily to an absolute certainty.  The "firmly convinced"
19         standard for conviction, repeated for emphasis, is further enhanced by
           the juxtaposed prescription that the jury must acquit if there is a "real
20         possibility" that the defendant is innocent.  This model instruction
           surpasses all others I have seen in stating the reasonable doubt
21         standard succinctly and comprehensively."

22
23  Victor, 114 S.Ct. at 1253 (Ginsburg J., concurring).

24         [12]    "Constitutional" in terms of both Petitioner's Sixth Amendment and
    Fourteen Amendment claims.

25
26         [13] The Court recognizes that although "clearly established law" as determined
    by the Supreme Court does not include dicta as contained in Justice Ginsburg's
27  concurring opinion, see Yarborough v. Alvarado, 541 U.S. 652 (2004), the Arizona
    Supreme Court cited Justice Ginsburg's concurrence in conjunction with clearly
28  established law set forth in Victor, Cage and Sullivan.

1   2003). Other federal Courts of Appeal, including the Ninth Circuit Court of Appeals,

2   have cited to Justice Ginsburg's concurring opinion in concluding that the Federal

3   Judicial Center's reasonable doubt instruction is constitutional.  See, e.g.,  Harris v.

4   Bowersox, 184 F.3d 744, 751-752 (8th Cir. 1999), cert. denied, 528 U.S. 1097

5   (2000); United States v. Artero, 121 F.3d 1256, 1257-59 (9th Cir. 1997), cert. denied,

6   522 U.S. 1133 (1998);  United States v. Brand, 80 F.3d 560, 566 & n. 8 (1st Cir.

7   1996), cert. denied, 519 U.S. 1077 (1997); United States v. Conway, 73 F.3d 975,

8   980 (10th Cir. 1995); United States v. Williams, 20 F.3d 125, 131-32 (5th Cir. 1994),

9   cert. denied, 513 U.S. 891 (1994).  The Court finds these cases persuasive, in both

10   number and substance, in concluding that the Arizona Supreme Court in State v.

11   Portillo  (and by implication the Arizona Court of Appeals in the instant case), did not

12   apply U.S. Supreme Court precedent unreasonably.

13   To the extent that the Petitioner, in his Reply, avers that the "firmly convinced"

14   language contained in the Federal Judicial Center's reasonable doubt instruction "is

15   not beyond a reasonable doubt" but that the "jury understood the instruction to allow

16   conviction based on proof insufficient to meet the standard required under Winship,"

17   (Doc. # 44 at 12), the Ninth Circuit has upheld its use in a jury instruction on

18   reasonable doubt.  United States v. Velasquez, 980 F.2d 1275, 1278 (9th Cir. 1992),

19   cert. denied, 508 U.S. 979 (1993).  The Court finds this authority persuasive in its

20   finding that the Arizona Court of Appeals was not objectively unreasonable in finding

21   the reasonable doubt instruction without error.

22   Accordingly, based on the foregoing, the Court will recommend that ground

23   two be denied and dismissed with prejudice.

24   ///

25   ///

26   ///

27   ///

28   ///

1   ///

2   ### 3.   Ground Three

3   Petitioner's third ground for relief alleges that the Confrontation Clause under

4   the Sixth Amendment was violated when the trial court admitted the victim's medical

5   records into evidence, which included opinions by the victim's treating physician.[14]

6   Both the trial court and the Arizona Court of Appeals also rejected Petitioner's

7   claim, holding that "[e]vidence does not violate the confrontation guarantee of the

8   state or federal constitutions if admitted under a firmly rooted exception to the

9   hearsay rule.  The exceptions for business records and for statements made for

10   medical diagnosis or treatment are firmly rooted exceptions." [Doc. 33, Ex. A at 9

11   (citing State v. Hamilton, 177 Ariz. 403, 409 (Ariz. Ct. App. 1993); White v. Illinois,

12   502 U.S. 346, 355-56 n.9 (1992); State v. Petzoldt, 172 Ariz. 272, 276 (Ariz. Ct. App.

13   1991)].

14   The right to confront witnesses is a fundamental right.  Pointer v. Texas, 380

15   U.S. 400, 403-04 (1965).  It is one of the safeguards essential to a fair trial. Pointer,

16   380 U.S. at 404, quoting Alford v. United States, 282 U.S. 687, 692 (1931); Douglas

17   v. Alabama, 380 U.S. 415, 418-19 (1965).  "The central concern of the Confrontation

18   Clause is to ensure the reliability of the evidence against a criminal defendant by

19   _____

20   [14]   The treating physician, a Doctor Sucher, wrote after the
       words, "Chief Complaint", "Possibly was drugged".  After

21   "History of present illness", Dr. Sucher wrote: "The patient

22   is a fifteen-year-old girl who works for a gentleman.  He
       gave her a glass of sparkling apple cider. . . Her mother

23   brings her here and is concerned that she was perhaps
       drugged and potentially whether she was abused" . . .

24   Under "Diagnostic Impression", Dr. Sucher wrote:

25   "Possible drug intoxication".  Under the work "Addendum",
       Dr. Sucher wrote: "The urine drug screen, however, was

26   positive for Benzodiazepines, confirming suspicion that

27   she had 'indeed' been slipped some sort of drug in the
       sparkling cider".

28   [Doc. # 30 at 7 (ellipses in original)].

1    subjecting it to rigorous testing in the context of an adversary proceeding before the

2    trier of fact."  Maryland v. Craig,  497 U.S. 836, 845-46 (1990).

3         In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme

4    Court reconsidered its prior Confrontation Clause jurisprudence relating to the

5    admission of prior statements of unavailable witnesses.  Prior to Crawford, the test

6    for determining whether an unavailable declarant's statement could be offered into

7    evidence was whether the statement bore "adequate indicia of reliability," either

8    because it fell within a "firmly rooted" hearsay exception or because it bore

9    "particularized guarantees of trustworthiness."  Ohio v. Roberts, 448 U.S. 56, 66

10   (1980), *overruled in part by* Crawford, 541 U.S. 36.   In Crawford, the Court

11   distinguished between testimonial evidence offered against a criminal defendant and

12   other types of evidence.  The Crawford Court held that testimonial evidence may not

13   be introduced against a criminal defendant unless the declarant is unavailable and

14   the defendant had a prior opportunity to cross-examine the declarant.   Crawford,

15   541 U.S. at 68. The Court concluded, "[w]here testimonial statements are at issue,

16   the only indicium of reliability sufficient to satisfy constitutional demands is the one

17   the Constitution actually prescribes: confrontation." Id.; see also United States v.

18   Wilmore,  381 F.3d 868, 871-872 (9th Cir. 2004).[15]

19        Here, Petitioner's claim fails for two reasons.  First, the statements made by

20   the victim's treating physician were not testimonial.  See Jensen v. Philer, 439 F.3d

21   1086, 1089-90 (9th Cir. 2006) (determining that statements that are not "made to a

22   government officer with an eye toward trial, the primary abuse at which the

23   Confrontation Clause was directed[,]" are not testimonial); see also United States v.

24   Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (holding that statements made by

25   declarant to family members were not "testimonial" because they were "not the kind

26

27        [15] The Ninth Circuit found Crawford to be retroactive in Bockting v. Bayer, 399

28   F.3d 1010 (9th Cir. 2005)(applying Teague v. Lane, 489 U.S. 288 (1989)).

1   of memorialized, judicial-process-created evidence of which Crawford speaks."). 

2   These statements were made in the context of identifying the drug in the victim's 

3   system and not for the purpose of utilizing them in a future proceeding against 

4   Petitioner.  The victim's physician did not make these statements to police, they 

5   were made after determining that a narcotic agent was found in the victim's urine 

6   and after the victim had informed the physician that she began to feel dizzy after she 

7   consumed the mug of apple cider provided to her by Petitioner.  These statements 

8   are not those which were contemplated by Crawford's prohibition of testimonial 

9   statements.

10       Second, Petitioner's claim fails because they were admitted pursuant to a 

11  firmly rooted hearsay exception.[16]  Hospital records are undoubtedly admissible 

12  pursuant to the business records exception to the hearsay rule, including statements 

13  made by physicians that rise to the level of conjecture.  Manocchio v. Moran, 919 

14  F.2d 770, 781 n.17 (1st Cir. 1990) ("Diagnoses and opinions, without restriction to 

15  routine vis-a-vis conjectural, or physical as against psychiatric, are included as 

16  proper subjects of admissible entries in addition to act, events, and conditions.").  As 

17  a result, the records were properly admitted in their entirety, and the Arizona Court 

18  of Appeal's decision that the Confrontation Clause requirements were satisfied was 

19  not "contrary to, [n]or involved an unreasonable application of, "the law of the 

20  Supreme Court set forth in either Crawford or Roberts.   See 28 U.S.C. §

21

22

23

24

25       [16] The Ninth Circuit stopped short of determining whether "the firmly rooted 

26  hearsay exception or particularized guarantees of trustworthiness test enunciated 

27  in Ohio v. Roberts, 448 U.S. 56, 66 (1980), is still the applicable law for the 

admissibility of non-testimonial evidence under the Confrontation Clause." Jensen, 

28  439 F.3d at 1090.

1  2254(d)(1).[17]  Accordingly, the Court will recommend that ground three be denied

2  and dismissed with prejudice.[18]

3  **4.     Ground Five**

4  Petitioner's remaining claim asserts ineffective assistance of counsel.

5  Specifically, Petitioner asserts that as a result of trial counsel's failure to object on

6  "foundational grounds" to the victim's physician's statements found in her medical

7  records, Petitioner suffered prejudice under Strickland.

8  A federal Petitioner must satisfy a two-pronged test to prevail on an ineffective

9  assistance of counsel challenge.  He must show both that counsel's performance

10  was constitutionally deficient, and that the deficiency was prejudicial.  Strickland v.

11  Washington, 466 U.S. 668, 687-688 (1984).    To establish that counsel's

12  performance was deficient, a petitioner is required to show that, "counsel's

13  representation fell below an objective standard of reasonableness." Strickland, 466

14  U.S. at 687-688.  To establish prejudice, a "defendant must show that there is a

15

16  [17] Moreover, even if this Court were to determine that Petitioner's rights under
17  the Confrontation Clause were violated, Petitioner has not demonstrated that the
   physician's statements produced a "substantial and injurious effect or influence in
18  determining the jury's verdict."  Morales v. Woodford, 388 F.3d 1159, 1180 (9th Cir.
19  2004).  These statements were not imparted to the jury via a witness, they were
   merely contained in the victim's medical records.  Moreover, the evidence presented
20  at trial supported the jury's guilty verdict.  The jury was absolutely justified in
21  concluding that Petitioner had, in fact, slipped Halcion to the victim when Petitioner
   admitted pouring two mugs of apple cider for the victim, the drug was found in her
22  system after leaving Petitioner's residence, and an empty Halcion bottle was found
   in the kitchen near the cider and empty mug.  Moreover, as Respondents note, the
23  jury was presented with uncontradicted evidence that Petitioner wrote a friend
24  asking him to lie and say that the victim approached him to ask where she could get
   drugs. [Doc. # 33, Ex. Y at 2-4].

25  [18] Petitioner additionally posits in his Reply that the physician's statement was
26  not supported by physical evidence.  However, as noted above this claim was not
   presented to the Arizona Court of Appeals and will not be considered on habeas
27  review.   Duncan, 513 U.S. at 365-66; Baldwin, 541 U.S. at 29; Anderson, 459 U.S.
28  at 6; Picard, 404 U.S. at 278; Casey, 386 F.3d at 911.

1  reasonable probability that, but for counsel's unprofessional errors, the result of the

2  proceeding would have been different.   A reasonable probability is a probability

3  sufficient to undermine confidence in the outcome." Id. at 694.   Under the prejudice

4  prong, the question is whether "counsel's errors were so serious as to deprive the

5  defendant of a fair trial, a trial whose result is reliable." Id. at 687.

6  In his Petition for Post-Conviction Relief, Petitioner maintained that counsel

7  should have argued that the treating physician's statements lacked a foundation.

8  [Doc. 33, Ex. Y at 2].  The Superior Court found that even if an objection would have

9  excluded such a partial statement by the physician, there was no reasonable

10  likelihood that the resulting conviction from the trial would have been different in light

11  of the other evidence presented at trial. [Doc. # 33, Ex. Y at 2-3]. The Arizona Court

12  of Appeals denied review. [Doc. 33, Ex. AA].

13  Petitioner has not rebutted the presumption that the state court's factual

14  findings were correct.  Petitioner's claim hinges on his contention that his attorney

15  failed to object on every conceivable evidentiary basis in attempting to exclude the

16  treating physician's statements in the victim's medical records.  However, Petitioner

17  himself acknowledges and demonstrates that his attorney fought vigorously to

18  exclude all of the victim's medical records, including those statements to which

19  Petitioner objects. [Doc. # 33, Ex. I at 20-33; Doc. # 43, Ex. EE]. Petitioner's counsel

20  cannot now be deemed ineffective for failing to level every possible objection to the

21  evidence Petitioner sought to exclude.  Strickland, 466 U.S. at 697-90 (recognizing

22  that  mere criticism of trial tactics is not sufficient to support a charge of ineffective

23  assistance of counsel); Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980)

24  ("Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of

25  inadequate representation").

26  Moreover, the Superior Court applied the correct legal standards to

27  Petitioner's claim.  Consistent with Strickland and Sixth Amendment jurisprudence,

28  the Court considered whether counsel's performance fell below the required level of

1   competence and whether the outcome of the proceedings would have been different.

2   [Doc. 33,Ex. Y at 1-3].  The Court's rejection of Petitioner's ineffective assistance of

3   counsel claim was appropriate in light of the determination that evidence of

4   Petitioner's guilt was more than sufficient to substantiate the guilty verdict.   Even

5   assuming that Petitioner's counsel should have objected to the physician's

6   statements on foundational grounds, Petitioner cannot show prejudice.[19]

7        The Court finds that Petitioner has not shown that the state court's factual

8   findings were incorrect or that the state court's decision was an unreasonable

9

10  _____

11      [19] The trial court during post-conviction proceedings more than adequately
    summarized the evidence against Petitioner when determining whether the admitted
12  statements by the victim's physician had a prejudicial effect on Petitioner's trial.
        (6) At trial, the evidence included:
13      (a) R.T.'s statement that Petitioner prepared the apple cider drink in his
    kitchen.
14      (b) R.T.'s statement that she drank the apple cider Petitioner gave her and
    that she began to feel dizzy.
15      (c) R.T.'s statement that after she tried to sit up, Petitioner told her to "stop
16  fighting it."
        (d) R.T.'s statement that thereafter she recalled nothing else that happened
17  at Petitioner's residence.
        (e) Petitioner's statement to R.T.'s mother that R.T. had not felt so well so she
18  laid down and rested during the afternoon at Petitioner's residence.
        (f) Medical evidence that the drug halcion found in R.T.'s urine was a sedative
19  with a strong hypnotic property which can induce sleep and cause dizziness and
20  lightheadedness.
        (g) Police testimony that they found an empty halcion prescription bottle in
21  Petitioner's kitchen.
        (h) Petitioner's statement to the police that:
22              (i) he had poured cider for R.T. at his residence but within her view;
                (ii) that R.T. was feeling drowsy and began to act "goofy";
23              (iii) Petitioner told R.T. to lie down;
24              (iv) Petitioner denied giving R.T. halcion; and
                (v) Without being asked, Petitioner volunteered a denial of touching
25              R.T.
26      (i) Petitioner's written letter statement asking an acquaintance to testify falsely
27  that R.T. had approached [him] and asked where she could get drugs.
    [Doc. # 33, Ex. Y at 2-4].
28

1  determination of the facts in light of the evidence.  See, e.g., 28 U.S.C. 2254(d)(2),

2  (e); Rice, 2006 WL 119293, *4.  Additionally, the state court's conclusions were

3  consistent with, not contrary to, clearly established Supreme Court precedent.

4  Further, there is no indication that applying Supreme Court precedent to the facts of

5  this case would warrant a different result than that reached by the state court.

6         Further, the trial court's decision to uphold counsel's strategic decisions and

7  give weight to the overwhelming evidence of guilt was consistent with federal law.

8  As explained at length above, strategic decisions fall within the province of counsel.

9  Strickland, 466 U.S. at 697-90; Wildman, 261 F.3d at 839; Gustave, 627 F.2d at 904.

10  Additionally, where the outcome of the proceedings would not have been different

11  were the arguments advanced by a petitioner made, the requisite prejudice to

12  establish an ineffective assistance of counsel claim has not been shown.  Strickland,

13  466 U.S. at 694.  The Court therefore recommends that Petitioner's fifth ground for

14  relief be denied.

15  **IV.    Conclusion and Recommendation**

16         For the reasons set forth above, the Court finds that ground four is

17  procedurally defaulted.  The Court further finds that grounds one, two, three, and five

18  lack merit.

19         **IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Habeas

20  Petition for Writ of Habeas Corpus [Doc. # 30] be **denied** and **dismissed** with

21  prejudice.

22         This recommendation is not an order that is immediately appealable to the

23  Ninth Circuit Court of Appeals.  Any notice of Appeal pursuant to Rule 4(a)(1),

24  Federal Rules of Appellate Procedure, should not be filed until entry of the district

25  court's judgment.  The parties shall have ten (10) days from the date of service of

26  a copy of this recommendation within which to file specific written objections with the

27  Court.  28 U.S.C. §636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of

28  Civil Procedure.  Failure to timely file objections to any factual determinations of the

1 Magistrate Judge will be considered a waiver of a party's right to *de novo*

2 consideration of the factual issues and will constitute a waiver of a party's right to

3 appellate review of the findings of fact in an order or judgment entered pursuant to

4 the Magistrate Judge's recommendation.

5     DATED this 7th day of April, 2006.

_____
Morton Sitver
United States Magistrate Judge